IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRIENDS OF YOSEMITE VALLEY, a non-profit corporation; and MARIPOSANS FOR ENVIRONMENTALLY RESPONSIBLE GROWTH, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DIRK KEMPTHORNE, in his official capacity as Secretary of the Interior; DEPARTMENT OF THE INTERIOR; NATIONAL PARK SERVICE; JOHN REYNOLDS, in his official capacity as Western Regional Director of the National Park Service; DAVID A. MILHALIC, in his official capacity as Superintendent of Yosemite National Park; and ROBERT STANTON, in his official capacity as Director of the National Park Service,<br><br>Defendants. | CV F 00-6191 AWI DLB<br><br>MEMORANDUM OPINION AND ORDER RE DEFENDANTS' MOTION FOR STAY OF INJUNCTION PENDING APPEAL<br><br>[Doc. 379] |

    In the Memorandum Opinion and Order entered on July 19, 2006, this court found the 2005 Merced Wild and Scenic River Revised Comprehensive Management Plan and Supplemental Environmental Impact Statement ("2005 Revised Plan") to be invalid. Subsequently, on November 3, 2006, the court issued a Memorandum Opinion and Order on

Plaintiffs' request for injunctive relief in which it ruled in part as follows:

> 8)   Plaintiffs' request for injunctive relief is HEREBY GRANTED as to the East Yosemite Valley Utilities Improvement Plan and Defendants are HEREBY ENJOINED from proceeding on that project until after the adoption of a valid CMP for the Merced Wild and Scenic River;
>
> 12)   Plaintiffs' request for injunctive relief is HEREBY GRANTED as to the Yosemite Valley Loop Road with the exception of the portion of the request addressing the repair and replacement of culverts which was previously denied. Defendants are HEREBY ENJOINED from proceeding on any other portion of that project until after the adoption of a valid CMP for the Merced Wild and Scenic River.

On December 28, 2006, Defendants filed a notice of appeal from the court's November 3, 2006, Memorandum Opinion and Order. Defendants now move to stay only the above two paragraphs of the court's Order pending appeal. Plaintiffs oppose the motion.

## LEGAL STANDARD

The district court has the discretion to suspend or modify an injunction pursuant to Rule 62(c), Federal Rules of Civil Procedure. The rule provides in part: "When an appeal is taken from an interlocutory or final judgment granting dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." The United States Supreme Court has held that the factors regulating the issuance of a stay pending appeal are: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

In Lopez v. Heckler, 713 F.2d 1432 - 33 (9th Cir. 1983), the Ninth Circuit explained as follows:

> The standard for evaluating stays pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction. See Nevada Airlines, Inc. v. Bond, 622 F.2d 1017, 1018 n. 3 (9th Cir.1980). In this circuit there are two interrelated legal tests for the issuance of a preliminary injunction. These tests are "not separate" but rather represent "the outer reaches 'of a single continuum.' " Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1201 (9th Cir.1980). At one end of the continuum, the moving party is required to show both a probability of

success on the merits and the possibility of irreparable injury. Id. See also Miss Universe, Inc. v. Flesher, 605 F.2d 1130, 1134 (9th Cir.1979). At the other end of the continuum, the moving party must demonstrate that serious legal questions are raised and that the balance of hardships tips sharply in its favor. Los Angeles Memorial Coliseum Commission, 634 F.2d at 1201; Miss Universe, 605 F.2d at 1134. "[T]he relative hardship to the parties" is the "critical element" in deciding at which point along the continuum a stay is justified. Benda v. Grand Lodge of International Association of Machinists, etc., 584 F.2d 308, 314-15 (9th Cir.1978), cert. dismissed, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979). In addition, in cases such as the one before us, the public interest is a factor to be strongly considered. See Warm Springs Dam Task Force v. Gribble, 565 F.2d 549, 551 (9th Cir.1977).

**DISCUSSION**

In support of their motion for a stay, Defendants contend that they have, at a minimum, raised serious questions regarding the validity of this court's rulings on the 2005 Revised Plan and, alternatively, are likely to succeed on the merits of these issues on appeal. Defendants then provide a series of supporting arguments. As Plaintiffs argue in response, this court has already considered and rejected each of Defendants' arguments in ruling on the validity of the 2005 Revised Plan. This court therefore does not find that Defendants are likely to succeed on the merits on appeal.

However, in light of the scarcity of case law regarding comprehensive management plans under WSRA, a reality previously noted by all of the parties in this case, the court finds that Defendants do present serious questions regarding this court's rulings on the 2005 Revised Plan. The issue is thus whether Defendants have shown that the balance of hardships tips sharply in their favor so as to support the stay they seek.

East Yosemite Valley Utilities Improvement Plan[1]

In the Memorandum Opinion and Order issued July 6, 2004, this court enjoined, among other things, certain actions included within the East Yosemite Valley Utilities Improvement Plan ("Utilities Plan") pending completion of a revised CMP. The court expressly ruled that the

---

[1] In 2002, the Park adopted the Capital Improvement Plan ("CIP"). The CIP establishes and prioritizes the sewer system repairs necessary to comply with the Cleanup and Abatement Order. Under the CIP, all sewer lines repairs would be conducted in their existing location. In 2003, the Park adopted the Integrated Utilities Master Plan ("IUMP"), which adopts some of the sewer repairs called for in the CIP but, in many cases, proposed to relocate utilitiy lines out of sensitive wetlands and meadows. Collectively, phases 1, 2 and 3 of the IUMP and phases 1 and 2 of the CIP comprise the East Yosemite Valley Utilities Improvement Plan.

3

National Park Service ("NPS") was not enjoined from, and "may proceed with any repairs necessary for compliance with the Clean Up and Abatement Order No. 5-00-7803 issued by the Regional Water Quality Control Board of the State of California." That Clean Up and Abatement Order ("CAO") directs NPS to ensure against spills that impact and degrade the water quality of the Merced River.

On September 3, 2004, Defendants filed a Motion to Modify Injunction to Allow Sewage System Repair to Comply with Clean-Up and Abatement Order, arguing that there was an immediate need for repair to Yosemite Valley's sewage system in order to comply with the CAO, and presented two options as to how they could proceed. In a Memorandum Opinion and Order entered November 1, 2004, the court found:

> As described by Defendants, Option 1 primarily involves relocating the sewage and other utility lines under the roadbeds of Southside Drive, Sentinel Drive, Northside Drive, and parking areas where possible. The goal is to remove the lines from their current locations, which include several meadows and ecologically sensitive riparian habitat. Option 1 for complying with the CAO was analyzed as Alternative 2, the Preferred Alternative, under the Utilities Plan. More specifically Defendants assert that Option 1 is the same work proposed under the first phase of the Utilities Plan, with the addition of two elements from the third phase. Defendants stress that Option 1 does not involve the implementation of the Utilities Plan as a whole.

After analyzing the parties' arguments in detail, the court entered an Order modifying the injunction to provide that in acting within the exception for any repairs necessary for compliance with the CAO, Defendants could proceed to implement the repairs set forth as Option 1.

As stated above, after holding the 2005 Revised Plan to be invalid, on November 3, 2006, the court issued a Memorandum Opinion and Order on Plaintiffs' request for injunctive relief in which it granted Plaintiffs' request for injunctive relief as to the East Yosemite Valley Utilities Improvement Plan and enjoined Defendants from proceeding on that project until after the adoption of a valid CMP for the Merced Wild and Scenic River. Defendants now move to stay that portion of the court's order.

The court has received substantial new supporting documentation from both sides in this matter. The court has also reviewed the proposed orders submitted by the parties, and finds the Defendants' proposed order filed March 19, 2007, particularly informative. In their

proposed order, Defendants state that if their motion for a stay pending appeal is granted, they will not "build out" or fully implement the Utilities Plan as described in the East Yosemite Valley Utilities Plan Environmental Assessment. Defendants further explain as follows in regard to what they will do if the stay is granted. First, NPS will consolidate utilities where necessary to relocate deteriorated sewer lines from sensitive resource areas into existing roadways or into less sensitive areas. Second, all Integrated Utility Master Plan ("IUMP") sewer line relocations will be focused on the prevention of future sewage spills, in accordance with requirements of the CAO. These relocations are described in the EA and also are depicted in the Fifth Declaration of Edward William Delaney, Exhibit A. These specific utilities relocations include:

    a.    Ahwahnee Road Utility Corridor / Ahwahnee Lift Station – sewage, water, telecom (EYVUIP EA, Figure II-21);

    b.    Yosemite Village East and West Utility Corridors – sewage, telecom (EYVUIP EA, Figure II-24), including Ranger Club Waste Water Realignment and Yosemite Valley School Waste Realignment; and

    c.    Lower Pines / Curry Village Utility Corridors – sewage, water, telecom, electric (EYVUIP EA, Figure II-19 & 22), including Lower Pines Lift Station and Electric Transformer and the Curry Village Gravity Waste Water Line Replacement.

Third, NPS will eliminate abandoned utility lines throughout Yosemite Valley including a river crossing from Lower Pines to North Pines, a river crossing between Housekeeping Camp and the former Lower River Campground, and deteriorated lines that are now located in Ahwahnee, Stoneman and Cook's Meadows as described in the EA. Fourth, Defendants state that , as specified in the CIP, multiple spot repairs to several existing sewer lines are also necessary to fulfill requirements of the CAO. Defendants affirm that the IUMP and CIP repairs described above will fulfill compliance with the CAO.

    After reviewing the arguments of the parties and declarations submitted, the court finds, as it has previously, that Plaintiffs have expressed valid concerns regarding the possibility of the proposed work predetermining user capacity and otherwise affecting the environment. However,

after reviewing the declarations of Defendants' experts Peterson, Harsha, Delaney, and Nicholas, the court finds that the need to protect both public health and safety and the ecologically sensitive habitats along the Merced River Corridor shifts the balance of equities sharply in favor of allowing Defendants to proceed with implementation of the Utilities Plan to the extent that they propose. That is not to say that no harm will result from allow Defendants to proceed. However, as this court previously found in its Memorandum Opinion and Order of November 1, 2004, in regard to implementing Option 1, the court is now convinced that greater harm would accrue by denying Defendants' request than would by granting it. Accordingly, with the limitations set forth below, the court will grant Defendants' motion to stay the injunction regarding implementation of the East Yosemite Valley Utilities Improvement Plan.

Yosemite Valley Loop Road Project

In the Memorandum Opinion and Order issued November 3, 2006, this court enjoined the Yosemite Valley Loop Road Project with the exception of the portion of the request addressing the repair and replacement of culverts which had previously been denied. Defendants seek to stay this injunction, contending that the current condition of the Loop Road poses a public safety hazard. This project is defined by the Federal Highways Administration (FHWA) as a "3-R" transportation project. By definition, a "3-R" project consists of resurfacing, restoration and rehabilitation activities.

After reviewing the declarations submitted by the parties, the court finds that the Mayer and Flynn declarations, as well as the two Tollefson declarations, refute Plaintiffs' objections to the Loop Road project. As Defendants argue, the declarations show that the purpose of this maintenance project is as follows: 1) rehabilitate an existing failing roadway; 2) restore the condition and function of the road drainage system; 3) place culverts in locations where they are needed to restore hydrology; 4) resurface or re-gravel existing roadside pullouts; 5) protect resources, by defining the limits of existing pullouts using barriers (i.e., curbing and rocks); and 6) correct existing road safety hazards. With the self-imposed limitations proposed by Defendants and included in the court's order below, Plaintiffs' concerns about widening the road, realigning the road , constructing new roadside parking spaces, or providing new access to the

1  Merced River are shown to be unfounded.  Further, the court finds that Plaintiffs' concerns
2  regarding increased visitor capacity are outweighed by Defendants' duty to maintain the only
3  road providing access to Yosemite Valley.  Accordingly, again with the limitations set forth
4  below, the court will grant Defendants' motion to stay the injunction regarding implementation
5  of the Yosemite Valley Loop Road Project.
6       In light of the above, IT IS HEREBY ORDERED as follows:
7  1) The court OVERRULES Defendants' objects to the declarations of George W. Whitmore,
8     Bridget McGinniss Kerr, and Jeanne C. Aceto;
9  1) The injunction issued November 3, 2006, is MODIFIED to provide that Defendants may
10    proceed to implement  Option 1 of the Utilities Plan, as previously identified in this
11    court's order of November 1, 2004;
12 2) The defendants are NOT authorized to proceed with several elements of IUMP Phase 2,
13    including:
14    a. Amphitheater Utility Corridor – sewage, water telecom, electric (EYVUIP
15       EA, Figure II-19);
16    b. Walk-in Campground Utility Corridor – sewage, water, telecom, electric
17       (EYVUIP EA, Figure II-19);
18    c. Upper Pines Utility Corridor –  water (EYVUIP EA, Figure II-19);
19    d. South Camp Utility Corridor – sewage, telecom (EYVUIP EA, Figure II-
20       19); and
21    e. Creek Crossing Utility Corridor – water, electric (EYVUIP EA, Figure II-
22       19).
23 3) The defendants also are NOT authorized to proceed with several elements of IUMP
24    Phases 3, including:
25    a. Tenaya Creek Campground Utility Corridor – sewage, water, telecom,
26       electric (EYVUIP EA, Figure II-19); and
27    b. Happy Isles Utility Corridor – water (EYVUIP EA, Figure II-18).
28 4) Fire Safety Improvements – Even though not required for compliance with the CAO, the

NPS may proceed with a utility project that would improve fire safety water supplies at the Ahwahnee Hotel. This authorized work would require the installation of the:

    a. IUMP Phase 1 - Tecoya Housing Utility Corridor – water and telecom (EYVUIP EA, Figure II-24); and

    b. IUMP Phase 3 - Ahwahnee Bridge Utility Corridor – water and telecom (EYVUIP EA, Figure II-20 & 21).

5) The NPS is authorized to implement the Yosemite Valley Loop Road Project as described in the Yosemite Valley Loop Road Environmental Assessment. The following conditions apply to the Loop Road Project:

    a. no more than four and one-half inches of new asphalt would be overlaid on top of the existing surface and the road would be no wider; and

    b. there will be no new roadways or sections of roadway, no expansion of the roadway prism, no realignment of the roadway, no new roadside parking spaces created, and no new access to the Merced River will be constructed as part of this maintenance project.

6) Subject to the foregoing terms and conditions, Paragraphs 8 and 12 of the court's November 3, 2006 Order are hereby STAYED pending entry of final judgment by the United States Court of Appeals for the Ninth Circuit with regard to Defendants' appeal or until further order of this court or the Ninth Circuit in this case;

7) In accordance with and as restricted to the Defendants' representations to the court set forth above in this Order, Defendants may proceed with those portions of the East Yosemite Valley Utilities Improvement Plan (including the Capital Improvement Plan), and with all portions of the Yosemite Valley Loop Road Project, *provided that* the authorized work is consistent with the specific terms and conditions for each project outlined above.

IT IS SO ORDERED.

**Dated:**    **March 21, 2007**        /s/ **Anthony W. Ishii**
0m8i78                                             UNITED STATES DISTRICT JUDGE